UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN DELUCCO,

    Plaintiff,

v.                                                               Case No. 8:19-cv-2792-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 15, 253-63). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 100-14, 134-48). Plaintiff then requested an administrative hearing (Tr. 190-92). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-78). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly

denied Plaintiff's claims for benefits (Tr. 15-27). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-3). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1975 (Tr. 26) claimed disability beginning October 17, 2015 (Tr. 15). Plaintiff obtained a high school education (Tr. 8). Plaintiff's past relevant work experience included work as a cook (DOT 313.361-014) and lawn mower (DOT 406.684-014) (Tr. 26). Plaintiff alleged disability due to neck and back pain with severe nerve pain and tingling and numbness in the upper and lower extremities that cause difficulty sitting, standing, and walking and difficulty using his hands (Tr. 21). Plaintiff also alleges disability due to migraine headaches that occur 1-2 times per month with medications and difficulty sleeping (Tr. 21). He also alleges that he suffers from anxiety, shaking, panic attacks, difficulty with memory and concentration, anger, and paranoia (Tr. 21). He claims that he isolates himself and interacts with no one except his girlfriend (Tr. 21).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2017 (Tr. 15, 17) and that Plaintiff had not engaged in substantial gainful activity since October 17, 2015, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder; anxiety disorder; schizoaffective disorder;

personality disorder; history of substance disorder; degenerative disc disease and history of cervical fusion; obesity; and headaches (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the following:

> lift up to 20 pounds occasionally and lift and carry up to 10 pounds frequently; stand and walk for about 6 hours and sit for up to 6 hours, each in an 8-hour workday with normal breaks. The claimant can no more than occasionally climb ropes, scaffolds, and 5 or more steps on ladders. The claimant can frequently climb stairs, ramps and lesser ladders, and frequently stoop, kneel, crouch, and crawl. The claimant can frequently reach, handle, and finger. The claimant should avoid concentrated exposure to extreme cold and concentrated use of hazardous industrial machinery. The claimant can understand, remember, carry out and apply simple and routine tasks and instructions with no more than occasional and brief interaction with the public and occasional interaction with co-workers (Tr. 20).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past

3

relevant work (Tr. 26). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as produce weigher (DOT 299.587-010) (70,000 jobs nationally), small products assembler (DOT 706.684-022) (140,000 jobs nationally), and housekeeper cleaner (DOT 323.687-014) (695,000 jobs nationally) (Tr. 27). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 27).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The SSA, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a),

416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides

with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42

U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by discounting the opinion evidence of Dr. Vijapura, Plaintiff's treating physician (Doc. 16). The ALJ determined that Dr. Vijapura's opinion warranted little evidentiary weight because it is unsupported by the overall evidence and is "in complete contrast to the evidence" (Tr. 24). For the following reasons, the ALJ failed to apply the correct legal standards and the ALJ's decision is not supported by substantial evidence.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more evidence a medical source presents to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record

as a whole, the more weight that opinion will receive.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Here, it is uncontested that Dr. Vijapura is a treating psychiatrist.  Therefore, the sole issue before this Court is whether the ALJ had good cause for giving Dr. Vijapura's opinion little evidentiary weight.  On April 5, 2017, Dr. Vijapura completed a Mental Capacity Source Statement (the "Questionnaire") where he rated Plaintiff's degree of limitation resulting from psychological factors (Tr. 592-

8

95). For each action/activity, Dr. Vijapura rated Plaintiff's ability to sustain concentration and persistence on a scale consisting of six options: none; slight; moderate; marked; extreme; and unknown (Tr. 592). The Questionnaire defines "Extreme" as "There is a major limitation in this area. There is no useful ability to function in this area." (Tr. 592). Dr. Vijapura opined that Plaintiff has extreme limitations in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary limits; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday without interruptions from psychologically based symptoms; the ability to complete a normal workweek without interruptions from psychologically based symptoms; and the ability to perform at a consistent pace with a one hour lunch break and two fifteen minute rest periods (Tr. 592).

Dr. Vijapura also indicated that Plaintiff's limitations were extreme as to Plaintiff's ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; and ability to travel in unfamiliar places or use public transportation. Additionally, Dr. Vijapura opined that Plaintiff would have four

absences in an average month (Tr. 592). Dr. Vijapura diagnosed Plaintiff with schizoaffective disorder, bipolar type, post traumatic stress disorder, general anxiety disorder, and border line personality disorder (Tr. 592). He further stated that Plaintiff:

> has mood fluctuations with depressed mood, anhedonia, lack of motivation, anger, easily agitated, and psychotic features. Anxiety is heightened when he leaves the house due to agoraphobia and is paranoid of others. He isolates to his house rarely leaving except for appointments (Tr. 593).

In explaining why Dr. Vijapura's opinion was given little weight, the ALJ merely stated that the limitations were consistent with the repeated findings of euthymic mood and appropriate affect "noted above" (Tr. 25). The ALJ also stated that the limitations are "inconsistent with most of the records that simply fail to indicate that the claimant was accompanied to his appointments and the lack of evidence showing inappropriate behavior during office visits, difficulty interacting with office staff, difficulty establishing a rapport, or any type of overt abnormal behaviors" (Tr. 25). However, the ALJ then acknowledges the fact that Plaintiff called the office at Sequel Care in August of 2018 and was yelling and swearing on the phone (Tr. 25; 786-96). After careful consideration, the undersigned finds that the ALJ failed to demonstrate or articulate good cause for discounting Dr. Vijapura's opinion and that the ALJ's finding is not supported by substantial evidence.

Dr. Vijapura's findings of extreme limitations are, in many ways, consistent with the record. For example, Dr. Elise Conroy at Sequel Health of Florida

indicated that Plaintiff had a suicidal ideation, was physically aggressive, had a rapid thought process, had an angry, depressed, anxious, and irritable mood, had an aggressive, restless, and agitated behavior, and had poor impulse control, insight, and judgment (Tr. 424). She noted that Plaintiff "has anger issues and snaps impulsively, almost to the point of endangering others" (Tr. 410) and also, that "[h]is anger and impulsivity are of concern as he may hurt someone when he explodes" (Tr. 425). The record also indicates that Plaintiff was "banned from a car wash because he became enraged and got into an argument." (Tr. 410).[1]

In contrast to this, the ALJ stated that Plaintiff has only a moderate limitation in interacting with others and that the evidence shows very minimal in terms of difficulty cooperating with others, handling conflicts with others, and keeping social interactions free of excessive irritability, sensitivity, and argumentativeness (Tr. 19). This is not supported by the record. Although Dr. Conroy's opinion was made prior to Plaintiff's alleged onset date, it appears that Plaintiff is still prone to suffering from impulsive and uncontrollable anger outbreaks. For example, on August 16, 2018, Plaintiff called Sequel Care and was "screaming, yelling and swearing, using F-bomb" (Tr. 789).

In discounting Dr. Vijapura's opinion, ALJ relies in part on the fact that Plaintiff was not accompanied by someone to most of his appointments.[2] However,

---

[1] The undersigned notes that Dr. Conroy's reports were made prior to Plaintiff's alleged onset date, but that due to the relatedness of the reports to the issues in this case, such reports still warrant consideration.
[2] The undersigned notes that Plaintiff was accompanied to some of his appointments by his minor daughter (Tr. 793).

11

this is not sufficient to demonstrate good cause, as it is not necessarily indicative of whether or not Plaintiff is disabled. Moreover, the ALJ contends that Dr. Vijapura's findings are inconsistent with the repeated findings of euthymic mood and appropriate affect (Tr. 25). While in certain instances Plaintiff's mood was reported as euthymic (Tr. 570, 670, 677), it was noted in other instances that Plaintiff's mood was "overwhelmed but calm" (Tr. 554, 556, 559). Other instances, such as the incident when Plaintiff called Sequel Care and was yelling, screaming and swearing, are inconsistent with a finding of euphoric mood. Further, on August 31, 2018, Stephanie Davis, PA-C (under the supervision of Dr. Pradeep Arora) noted that Plaintiff had been more emotional, was experiencing negative thinking with a depressed mood, had suicidal thoughts and even made a statement that he "wanted to shoot himself in the head" (Tr. 789). Thus, the ALJ simply fails to demonstrate that it's decision to discount the opinion of Dr. Vijapura is supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of March, 2021.

                                                                ANTHONY E. PORCELLI
                                                                United States Magistrate Judge

cc:  Counsel of Record